# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHELLE LEGALL-JOHNSON,** | § | |
| **AND WILLIAM JOHNSON** | § | |
|      *PLAINTIFFS* | § | |
| | § | |
| **V.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 4:22-cv-01560** |
| **JP MORGAN CHASE BANK** | § | |
| **NATIONAL ASSOCIATION,** | § | |
| **JP MORGAN CHASE & CO., THUY** | § | |
| **FRAZIER, CINDY MENDOZA, AND** | § | |
| **MCCARTHY AND HOLTHUS, LLP** | § | |
|      *DEFENDANTS* | § | |

---

## DEFENDANTS JPMORGAN CHASE & CO. AND JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

---

Respectfully submitted,

*/s/ Wm. Lance Lewis*

WM. LANCE LEWIS, Attorney-in-Charge
Texas Bar No. 12314560
S.D. Bar No. 28635
RACHEL L. HYTKEN, of counsel
Texas Bar No. 24072163
S.D. Bar No. 1130996
**QUILLING, SELANDER, LOWNDS,**
   **WINSLETT & MOSER, P.C.**, of counsel
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
llewis@qslwm.com
rhytken@qslwm.com

**ATTORNEYS FOR DEFENDANTS**
**JPMORGAN CHASE BANK, N.A. AND**
**JPMORGAN CHASE & CO.**

Table of Contents

Table of Authorities ..................................................................................................... iii

I.     PROCEDURAL BACKGROUND ........................................................ 1

II.    SUMMARY ........................................................................................ 2

III.   ISSUES TO BE DECIDED BY THE COURT ....................................... 4

IV.    STANDARD AND REQUEST FOR JUDICIAL NOTICE .................... 4

V.     ARGUMENT AND AUTHORITIES ..................................................... 6

   A.    The quiet title claim ignores the duly recorded assignment of the Deed of Trust. .. 6

      1.    JPMC's foreclosure extinguished Legall-Johnson's interest in the Property. .......... 6

      2.    Judicial estoppel bars Plaintiffs' quiet title claim, which also fails because it rests
            on threadbare allegations that the debt was "invalid." ............................................ 7

      3.    Plaintiffs do not plead tender as required to state a claim to quiet title. ................ 10

   B.    Plaintiffs do not state a viable wrongful foreclosure claim. ................................... 10

      1.    As a matter of law, the sale price was not grossly inadequate. ............................... 11

      2.    Legall-Johnson is not a borrower, mortgagor, or successor in interest. ................ 12

      3.    An appointment of substitute trustee was recorded prior to the sale. .................... 14

   C.    The statute of frauds bars the purported promissory estoppel claim. .................... 16

   D.    Plaintiffs' purported fraud claim does not satisfy Rules 9 or 12(b)(6). ................ 17

   E.    Plaintiffs cannot prevail on a claim for civil conspiracy. ...................................... 18

CONCLUSION ........................................................................................................ 19

CERTIFICATE OF SERVICE ................................................................................. 19

Table of Authorities

Cases

*Abreu v. Zale Corp.*,
   3:12-CV-2620-D, 2013 WL 1949845  (N.D. Tex. May 13, 2013)........................... 10

*Abreu v. Zale Corp.*,
   No. 3:12–CV–2620–D, 2013 WL 1949845 (N.D. Tex. May 13, 2013)................... 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................... 4

*Baucum v. Great Am. Ins. Co. of New York*,
   370 S.W.2d 863 (Tex. 1963)............................................................................... 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................... 5

*Benchmark Elecs., Inc. v. J.W. Huber Corp.*,
   343 F.3d 719 (5th Cir. 2003) .............................................................................. 22

*Beta Drilling, Inc. v. Durkee*,
   821 S.W.2d 739 (Tex. App.—Houston [14th Dist.] 1992, writ denied)................. 21

*Biggers v. BAC Home Loans Servicing, LP*,
   767 F.Supp.2d 725 (N.D. Tex. 2011) ................................................................. 15

*Blake v. Amoco Fed. Credit Union*,
   900 S.W.2d 108 (Tex. App.—Houston [14th Dist.] 1995, no writ) ...................... 16

*Charter Nat'l Bank-Houston v. Stevens*,
   781 S.W.2d 368 (Tex. App.–Houston [14th Dist.] 1989, writ denied)................... 14

*Claudio D. v. Countrywide KB Home Loans*,
   3:14-CV-3969-K, 2015 WL 5164812 (N.D. Tex. Sept. 1, 2015)........................... 10

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) .............................................................................. 6

*Cook-Bell v. Mortg. Elec. Registration Sys., Inc.*,
   868 F. Supp. 2d 585 (N.D. Tex. 2012). ............................................................... 7

*Davis v. Wakelee*,
   15 S. Ct. 555 (1895)........................................................................................... 11

*FDIC v. Blanton*,
   918 F.2d 524 (5th Cir. 1990) .............................................................................. 15

*Feuerbacher v. Wells Fargo Bank*,
  Case No. 4:15-CV-69, 2016 WL 3669744 (E.D. Tex. July 11, 2016), aff'd, 701 F.
  App'x 297 (5th Cir. 2017) ............................................................................................. 13

*Fillion v. David Silvers Co.*,
  709 S.W.2d 240 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)) ............................ 8

*First Merit Bank, N.A.*,
  52 S.W.3d 749 (Tex. 2001) ........................................................................................... 23

*Fornesa v. Fifth Third Mortg. Co.*,
  897 F.3d 624 (5th Cir. 2018), cert. denied, 139 S. Ct. 2723 (2019), reh'g denied,
  18-1339, 2019 WL 3538101 (U.S. Aug. 5, 2019); ................................................................. 10

*Glasscock v. Citizens Nat'l Bank*,
  553 S.W.2d 411 (Tex. App.—Tyler 1977, writ ref'd n r.e.) .................................................... 17

*Hoffman v. L & M Arts*,
  838 F.3d 568 (5th Cir. 2016) ........................................................................................ 22

*Homoki v. Conversion Services, Inc.*,
  717 F.3d 388 (5th Cir. 2013) ........................................................................................ 24

*In re Flugence*,
  738 F.3d 126 (5th Cir. 2013) ........................................................................................ 12

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191(5th Cir. 2007) .......................................................................................... 6

*Jemison v. CitiMortgage, Inc.*,
  No. H-13-2475, 2014 WL 2739351,  (S.D. Tex, June 14, 2014) (Rosenthal, J.) ..................... 8

*Jethroe v. Omnova Solutions, Inc.*,
  412 F.3d 598 (5th Cir. 2005) .................................................................................. 11, 12

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
  546 S.W.3d 648 (Tex. 2018) .......................................................................................... 21

*Kane v. Nat'l Union Fire Ins. Co.*,
  535 F.3d 380 (5th Cir. 2008) ................................................................................... 9, 11

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
  453 B.R. 645 (N.D. Tex. 2011) ....................................................................................... 6

*Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*,
  567 F.3d 182 (5th Cir. 2009). ......................................................................................... 5

*Lone Star Fund V (U.S.), L.P. v. Barclay's Bank PLC,*
    594 F.3d 383 (5th Cir. 2010) ................................................................ 4

*Love v. Tyson Foods, Inc.,*
    677 F.3d 258 (5th Cir. 2012). ............................................... 10, 12, 13

*Maldonado v. Wells Fargo Bank, N.A.,*
    CV H-16-3574, 2017 WL 4950063 (S.D. Tex. Nov. 1, 2017) ................ 7

*Martins v. BAC Home Loans Servicing, L.P.,*
    722 F.3d 249 (5th Cir. 2013) ...................................... 8, 14, 20, 21

*Matter of Parker,*
    655 Fed. Appx. 993 (5th Cir. 2016)..................................................... 13

*Milton v. U.S. Bank Nat. Ass'n,*
    508 Fed. App'x 326 (5th Cir. 2013) ................................................... 20

*Montenegro v. Ocwen Loan Servicing, LLC,*
    419 S.W.3d 561, (Tex. App.—Amarillo 2013, pet. denied)................. 17

*Moreno v. Sterling Drug, Inc.,*
    787 S.W.2d 348 (Tex.1990).................................................................. 24

*Navarro v. Grant Thornton, LLP,*
    316 S.W.3d 715 (Tex. App.—Houston [14th Dist.] 2010, no pet.)........ 23

*New Hampshire v. Maine,*
    121 S. Ct. 1808 (2001) ........................................................................ 11

*Norris v. Hearst Trust,*
    500 F.3d 454 (5th Cir. 2007) ................................................................ 6

*Price v. U.S. Bank Nat. Ass'n,*
    No. 3:13–CV–0175–O, 2013 WL 3976624  (N.D. Tex. Aug. 3, 2013) ................ 15

*Reed v. City of Arlington,*
    650 F.3d 571 (5th Cir. 2011) ................................................................ 9

*Richardson v. Kent,*
    47 S.W.2d 420 (Tex. App.—Dallas 1932, no writ) ............................... 15

*Rodriguez v. Ocwen Loan Servicing, LLC,*
    306 Fed. Appx. 854 (5th Cir. 2009)..................................................... 16

*Spivey v. Robertson,*
    197 F.3d 772 (5th Cir. 1999) ................................................................ 5

*Stevenson v. Koutzarov,*
   795 S.W.2d 313 (Tex. App.—Houston [1st Dist.] 1990, writ denied) .................................... 23

*Superior Crewboats,*
   374 F.3d 330 (5th Cir. 2004 .................................................................................................. 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2008) ................................................................................................................. 6

*Terra XXI, Ltd. v. Harmon,*
   279 S.W.3d 781 (Tex. App.—Amarillo 2007, pet. denied) .................................................... 15

V*enture Assocs. Corp. v. Zenith Data Sys. Corp.,*
   987 F.2d 429 (7th Cir. 1993) ................................................................................................... 6

*Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n,*
   509 Fed. Appx. 367 (5th Cir. 2013) ....................................................................................... 15

*Williams v. WMX Techs., Inc.,*
   112 F.3d 175 (5th Cir. 1997) .................................................................................................. 22

Statutes

18 U.S.C. § 541(a) (1) ................................................................................................................. 11

Tex. Bus. & Com. Code § 26.02(b) ............................................................................................. 20

Tex. Prop. Code § 51.0001(4)(C) .................................................................................................. 8

Tex. Prop. Code. § 51.002(e) ....................................................................................................... 19

Rules

Fed. R. Civ. P. 9 (b) ..................................................................................................................... 22

Federal Rule of Civil Procedure 12(b)(6), .................................................. 1, 4, 5, 6, 7, 22, 23, 24

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants JPMorgan Chase & Co. ("Chase & Co."), incorrectly sued as "JP Morgan Chase & Co.", and JPMorgan Chase Bank, N.A. ("JPMC"), incorrectly sued as "JP Morgan Chase Association" and "JP Morgan Chase Bank National Association," (together, "Defendants") file this motion requesting dismissal of *Plaintiff's [sic.] Original Petition, Application for Temporary Order, Hearing Date for Temporary Injunction, Permanent Injunction, Request for Post-Judgment Relief, and Request for Disclosure* (the "Complaint") for failure to state a claim.

## I.
## PROCEDURAL BACKGROUND

This suit arises from a 2007 purchase-money mortgage (the "Loan") between JPMC and William Johnson (the "Borrower"). JPMC foreclosed on June 4, 2019; at that time, the Loan was due for March 1, 2018. Michelle Legall-Johnson ("Legall-Johnson"), who resides in the Property and is not a party to the Loan, has filed multiple petitions to hinder JPMC from executing on its writ of possession.

On January 26, 2022, Legall-Johnson and the Borrower filed a prior suit against JPMC to obtain improper injunctive relief and prevent JPMC from executing on its writ of possession. The prior suit was removed to federal court on February 15, 2022, and Plaintiffs filed a notice of nonsuit on February 22, 2022.

On May 2, 2022, Plaintiffs filed this suit with the aim of further delaying eviction. Defendants removed this suit to federal court on May 16, 2022. As discussed below, Plaintiffs fail to state a claim for which relief can be granted, and their Complaint should be dismissed.

## II.

## SUMMARY

On November 20, 2007, Borrower[1] obtained a purchase money loan in the original principal amount of $474,050 for 12202 Leather Saddle Ct, Houston, Texas 77044 (the "Property") as evidenced by the Note and Deed of Trust (Doc. 1-5 at 54, 57.) Also on November 20, 2007, the original lender, Texas Supreme Mortgage Inc., assigned the deed of trust to JPMC. (Ex. A, Assignment of Deed of Trust, recorded November 30, 2007.)

In 2012, Borrower and JPMC modified the Loan to make payments more affordable for the Borrower. Ex. B. Specifically, JPMC agreed to defer repayment of $145,000 to June 1, 2052. The Loan Modification Agreement also amortized payments over 40 years and reduced the interest rate to 2% for the first five years, 3% for 2017, and 3.750% for years 7-40.

Through his subsequent bankruptcy plan (Exs. C-3, C-4), Borrower made payments on the Loan. When the bankruptcy concluded, the Loan was due for March 1, 2018. (Ex. C-5, Order Deeming the Mortgage Current and Directing Debtor(s) to Resume Payments.) Around the time Borrower ceased making payments, he conveyed title to the Property to Legall-Johnson. (Doc. 1-5 at 77, Special Warranty Deed to Legall-Johnson dated February 1, 2018). Because no subsequent payments were made to JPMC, the Loan went into default. (*See* Doc. 1-5 at 134) (letter from Legall-Johnson stating that the Borrower "may be obligated and/or responsible for some if not all part of the defaulted debt on the mortgage").

Despite the duly recorded assignment, Plaintiffs seek to declare the foreclosure invalid and to quiet title on the basis that JPMC did not originate the Loan (Compl. at 7, ¶ 27) (alleging that "Chase failed to meet its burden it had legal standing to sue or was owed a debt" originated by

---

[1] Borrower was a single man at the time of the Loan's origination. Borrower and Ms. Legall-Johnson married on or about December 15, 2007. (Compl. at 4, ¶ 3.)

Texas Supreme Mortgage Inc.). Their position conflicts with Borrower's representations in his bankruptcy action, and consequently, judicial estoppel bars their claim.

Plaintiffs challenge the foreclosure on grounds that neither Legall-Johnson, nor her attorney, received notice (Compl. at 8) though Texas law does not afford non-borrowers a right to foreclosure notices. They also allege the substitute trustee was not properly appointed (Compl. 9), ignoring the duly recorded appointment, and that JPMC sent untimely notice of the sale, pointing to an eviction notice (not a foreclosure notice). But even in the unlikely event Plaintiffs plausibly alleged a defect, they cannot as a matter of law show that the foreclosure sale price was grossly inadequate or a causal connection between the alleged defect and the sale price. Accordingly, their wrongful foreclosure claim suffers from fatal defects and should be dismissed.[2]

Additionally, Legall-Johnson asserts claims for fraud and promissory estoppel based on allegations that JPMC told Legall-Johnson she could continue to make payments on the Loan in lieu of refinancing. But Legall-Johnson does not, and cannot, allege that she made the payments due under the Loan to JPMC. On the contrary, she admits the Loan was in default. (Doc. 1-5 at 134.) When JPMC foreclosed on June 4, 2019 (Compl. at 15), the Loan was still due and owing for March 1, 2018. Legall-Johnson insinuates that she made no payments to JPMC because she believes no debt was owed to JPMC. (Compl. at 13) ("since Chase made its promise Plaintiff learned that Dr. Legall may not owe any debt to Chase"). The Complaint states no claim for which relief can be granted.

---

[2] The Complaint contains non-sensical allegations and requests. For example, it refers to "Defendants Home Loans Servicing" and "Defendants Home Loan." Compl. at 9. The prayer refers to inapplicable consumer statutes such as the Texas Deceptive Trade Practices Act that are not mentioned anywhere in the body of the Complaint. Because the Complaint does not make known Plaintiffs' intention to assert such causes of action or identify the factual bases to support them, this motion does not discuss them in detail. To the extent alleged, Plaintiffs have not stated a claim for relief under the DTPA, Texas Debt Collection Act, for breach of the "Uniform Covenant," for loss value of the property "as a result of the third party's mineral lien." Fed. R. Civ. P. 8(a) (requiring a short and plan statement of the claim showing that the pleader is entitled to relief).

## III.

## ISSUES TO BE DECIDED BY THE COURT

1.　　Plaintiffs' quiet title claim, premised on conclusory allegations the debt was "invalid" and that JPMC lacked standing to foreclose, fails for a multitude of reasons, including that Plaintiffs did not tender the amount owing on the Loan.

2.　　Plaintiffs do not state a viable wrongful foreclosure claim because the sale price was not grossly inadequate as a matter of law and the alleged defects rest on a misapprehension of law and mistaken references to eviction (not foreclosure) notices.

3.　　The statute of frauds bars Plaintiffs' promissory estoppel claim.

4.　　Plaintiffs' purported fraud claim does not satisfy Rules 9 or 12(b)(6).

## IV.

## STANDARD AND REQUEST FOR JUDICIAL NOTICE

To survive a motion to dismiss based on Rule 12(b)(6), a plaintiff must plead sufficient facts to state "a legally cognizable claim that is plausible." *Lone Star Fund V (U.S.), L.P. v. Barclay's Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The pleading standard set forth by the United States Supreme Court does not "require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the court can draw a reasonable inference from the pleadings that the defendant is liable for the misconduct alleged." *Id*. at 556. The factual allegations must be sufficient to raise the right to relief above a speculative level. *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*, 567 F.3d 182, 184 (5th Cir. 2009). "Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief." *Twombly*, 550 U.S. at 557.

In determining the validity of a Rule 12(b)(6) motion, a court cannot look beyond the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "'attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting V*enture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)). When a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); accord *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when

ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

Defendants request that, in addition to the materials attached to the Complaint, the Court to take judicial notice of the following documents that are available in the public record or central to Plaintiffs' claims: (1) Assignment of the Deed of Trust, (2) Loan Modification, (3) Bankruptcy Documents, and (4) Appointment of Substitute Trustee.

## V.
## ARGUMENT AND AUTHORITIES

**A.    The quiet title claim ignores the duly recorded assignment of the Deed of Trust.**

Under Texas law, the elements of a cause of action to quiet title are: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Cook-Bell v. Mortg. Elec. Registration Sys., Inc.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012). An important consideration when deciding a quiet title claim is whether plaintiff has "tender[ed] whatever amount is owed on the note." *Maldonado v. Wells Fargo Bank, N.A.*, CV H-16-3574, 2017 WL 4950063, at *3 (S.D. Tex. Nov. 1, 2017) (citing *Jemison v. CitiMortgage, Inc.*, No. H-13-2475, 2014 WL 2739351, at *18 (S.D. Tex, June 14, 2014) (Rosenthal, J.) ("Texas courts have made clear that 'a necessary prerequisite to the ... recovery of title ... is tender of whatever amount is owed on the note.' "); *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)). As discussed below, Plaintiffs fail to meet the first and third elements and do not plead tender.

1.    <u>JPMC's foreclosure extinguished Legall-Johnson's interest in the Property.</u>

With respect to the first element, Plaintiffs do not have an interest in the Property. At the time of the foreclosure sale, the Borrower had no interest in the Property because he conveyed his

right, title, and interest in the Property to Legall-Johnson subject to the Deed of Trust. (Doc. 1-5 at 77.) Legall-Johnson's interest in the Property was extinguished by the foreclosure sale.

Plaintiffs challenge the Substitute Trustee's Deed on the basis that JPMC did not have standing to foreclose (Doc. 1-5 at 8, ¶ 27). This argument ignores the 2007 assignment from Texas Supreme Mortgage Inc. (Ex. A) that was duly recorded in the Official Real Property Records of Harris County, Texas on November 30, 2007. As "the last person to whom the security interest has been assigned of record," JPMC meets the definition of mortgagee under Chapter 51 of the Texas Property Code. Tex. Prop. Code § 51.0001(4)(C) (defining "mortgagee"). Because JPMC serviced the Loan and held the beneficial interest as the mortgagee, undoubtedly it had standing to foreclose. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013) (mortgagee has standing to foreclose). Having failed to demonstrate that they have an interest in the Property, Plaintiffs' do not meet the first element of a quiet title claim.

    2.   <u>Judicial estoppel bars Plaintiffs' quiet title claim, which also fails because it rests on threadbare allegations that the debt was "invalid."</u>

With respect to the third element (that JPMC's claim to the Property is invalid or unenforceable), Plaintiffs make two arguments. First, they allege JPMC's foreclosure sale was invalid, a contention that has no merit as discussed in section B below. Second, Plaintiffs contend wholly without explanation that the debt relating to the Loan was "invalid." Plaintiffs allege no facts to support this threadbare allegation and judicial estoppel precludes that claim.

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington,* 650 F.3d 571, 573-74 (5th Cir. 2011) (en banc) (citation omitted). Its purpose "is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d

380, 385 (5th Cir. 2008) (citation and internal quotation marks omitted). "Judicial estoppel is particularly appropriate where ... a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d 624, 628 (5th Cir. 2018), cert. denied, 139 S. Ct. 2723 (2019), reh'g denied, 18-1339, 2019 WL 3538101 (U.S. Aug. 5, 2019); *Love v. Tyson Foods, Inc.,* 677 F.3d 258 (5th Cir. 2012).

"[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims." In re Superior Crewboats,* 374 F.3d 330, 335 (5th Cir. 2004). "[I]f a litigant fails to disclose a pending or potential claim during a bankruptcy proceeding and later attempts to pursue that claim in a court of law, then element one of the test for judicial estoppel is met." *Claudio D. v. Countrywide KB Home Loans*, 3:14-CV-3969-K, 2015 WL 5164812, at *9 (N.D. Tex. Sept. 1, 2015). The judicial doctrine "applies when (1) the position of the party to be estopped is plainly inconsistent with its previous position, (2) the court accepted the previous position, and (3) the party did not act inadvertently." *Abreu v. Zale Corp.*, 3:12-CV-2620-D, 2013 WL 1949845, at *2 (N.D. Tex. May 13, 2013); *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position...." *New Hampshire v. Maine*, 121 S. Ct. 1808, 1814 (2001) (quoting *Davis v. Wakelee*, 15 S. Ct. 555, 558 (1895)) (internal quotation marks omitted).

"Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition." *Kane v. National Union*

*Fire Insurance Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (citing 18 U.S.C. § 541(a) (1)). Courts agree that a debtor in bankruptcy who fails to disclose an asset, including a cause of action or other legal claim, "cannot realize on that concealed asset after the bankruptcy ends." *See Jethroe*, 412 F.3d at 600-01. "A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Id.*, 412 F.3d at 600.

Plaintiffs assert a position in this action—that the debt relating to the Loan is "invalid"— that is inconsistent with Borrower's position in his Bankruptcy Proceedings. The Fifth Circuit has held that because bankruptcy petitioners are under an affirmative obligation to disclose claims and potential claims to the bankruptcy court, failure to disclose such claims is an implicit representation that the petitioner has no claims. *See In re Flugence*, 738 F.3d 126, 230 (5th Cir. 2013). "Courts have consistently held that a bankruptcy court accepts a debtor's position when it relies on her asset schedules and confirms her bankruptcy plan. *Abreu v. Zale Corp.*, No. 3:12–CV–2620–D, 2013 WL 1949845, at *1 (N.D. Tex. May 13, 2013) (Fitzwater, C.J.) (citations omitted) (citing *Jethroe*, 412 F.3d at 600 (holding that "[the bankruptcy] court certainly confirmed [debtor's] plan at least in part based on its assessment of her assets and liabilities")). Because Borrower represented that he had no claims relating to the Loan and obtained bankruptcy relief based on that position, neither Borrower nor his privy (Legall-Johnson) may take an inconsistent position by asserting that JPMC does not own the Loan. The Fifth Circuit has held that in bankruptcy cases, the debtor's failure to satisfy his statutory disclosure duty is inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012). The Fifth Circuit stated "the motivation sub-element is

almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of [the] potential financial benefit resulting from the nondisclosure." *Love*, 677 F.3d at 262. Here, the bankruptcy court confirmed the Chapter 13 Plan, and Plaintiffs would reap a windfall if they prevailed and obtained relief without having accounted for his claims in the bankruptcy. Thus, the motivation prong of the inadvertence element is satisfied.

While Ms. Legall-Johnson was not a debtor in Borrower's bankruptcy proceedings, judicial estoppel applies to bar her quiet title claim because Plaintiffs are in privity due to their spousal relationship and the conveyance from Borrower to Ms. Legall-Johnson. *See Feuerbacher v. Wells Fargo Bank*, Case No. 4:15-CV-69, 2016 WL 3669744, at *3, *3 n.2 (E.D. Tex. July 11, 2016), aff'd, 701 F. App'x 297 (5th Cir. 2017) (holding that the spouse of a bankruptcy debtor was subject to judicial estoppel).

Accordingly, because each element of judicial estoppel is satisfied, the doctrine prohibits Plaintiffs from challenging JPMC's interest in the Loan, which arose pre-petition.

3.   Plaintiffs do not plead tender as required to state a claim to quiet title.

Plaintiffs do not allege they tendered the amount of the debt to JPMC. *See Matter of Parker*, 655 Fed. Appx. 993, 996, n. 6 (5th Cir. 2016) (noting in the context of a quiet title claim that "[a] valid and legal tender of money consists of the actual production of the funds and offer to pay the debt involved" and that tender "must not be dependent on another variable; it must be unconditional" (citing *Baucum v. Great Am. Ins. Co. of New York*, 370 S.W.2d 863, 866 (Tex. 1963)). For this reason alone, their quiet title claim fails.

**B.     Plaintiffs do not state a viable wrongful foreclosure claim.**

To state a claim for wrongful foreclosure, a plaintiff must allege: (1) a defect in the foreclosure sale; (2) a grossly inadequate selling price; and (3) a causal connection between the

defect and the grossly inadequate selling price. *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.–Houston [14th Dist.] 1989, writ denied). Because Plaintiffs' Complaint—even taken as true—does not support one or more elements of their purported claim for wrongful foreclosure, it fails to state a claim, and dismissal is proper.

    1.  <u>As a matter of law, the sale price was not grossly inadequate.</u>

Plaintiffs do not, and cannot, establish that the Property sold for an inadequate selling price or that there is a causal connection between the defect in the sale and the grossly inadequate selling price. The sale price was not, as a matter of law, grossly inadequate. According to the Harris County Appraisal District, the market value of the Property in 2019 was $570,594. (Doc. 1-16 at 3). The Property's sale price at foreclosure was $496,110.10. (Doc. 1-5 at 110.) A grossly inadequate price is a price "so little as to shock a correct mind." *Martins v. BAC Home Loans Servicing, L.P*., No. 12–20449, 2013 WL 3213633, at *4 (5th Cir. June 26, 2013) *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 729 (N.D. Tex. 2011); *see also Price v. U.S. Bank Nat. Ass'n*, No. 3:13–CV–0175–O, 2013 WL 3976624, at * 8 (N.D. Tex. Aug. 3, 2013). As the Fifth Circuit held, "Texas cases establish that a foreclosure price exceeding 50% is not grossly inadequate." *Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, 509 Fed. Appx. 367, 369 (5th Cir. 2013); *Terra XXI, Ltd. v. Harmon*, 279 S.W.3d 781, 788 (Tex. App.—Amarillo 2007, pet. denied) (citing *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex. App.—Dallas 1932, no writ)). "The weight of Texas authority rejects a determination of gross inadequacy where, as here, property sells for over 60% of fair market value." *FDIC v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990). Because the sale price was 87% of the value of the Property, it was not grossly inadequate as a matter of law. Thus, Plaintiffs cannot satisfy the second or third elements of a wrongful foreclosure claim.

In addition, Plaintiffs fail to allege that any alleged irregularity in the sale caused the property to be sold for a grossly inadequate sale price as discussed below. Their complaint is that simply because there was an alleged defect, the sale is wrongful, even if it did not result in a grossly inadequate sale price. Accordingly, Plaintiffs have not stated a viable claim premised on any alleged defect in the foreclosure sale.

2.  Legall-Johnson is not a borrower, mortgagor, or successor in interest.

Plaintiffs contend that Legall-Johnson was entitled to notice of the foreclosure sale—though she is not a borrower, mortgagor, or "successor in interest" within the meaning of the Deed of Trust. Fifth Circuit authority contradicts their position. *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 Fed. Appx. 854, 856 (5th Cir. 2009) (under Texas law, "[t]here is no legal requirement that personal notice of a foreclosure be sent to persons not parties to the deed of trust.")

The Borrower purchased the Property with the Loan as a single man and the sole borrower and mortgagor. Legall-Johnson was not a party to the Loan. According to the divorce decree, Legall-Johnson and the Borrower entered into a written agreement and stipulation for the division of their assets and liabilities. The divorce decree ordered that Legall-Johnson "pay, as a part of the division of the estate of the parties. . . the balance due" on the Loan (Agreed Final Decree of Divorce at 24), and in exchange Borrower was divested of all right, title, interest, and claim to the Property. While the divorce decree adjudicated the rights of the ex-spouses vis-à-vis one another, it did not change their obligations with respect to their creditors. *See e.g., Blake v. Amoco Fed. Credit Union*, 900 S.W.2d 108, 111 (Tex. App.—Houston [14th Dist.] 1995, no writ); *Glasscock v. Citizens Nat'l Bank*, 553 S.W.2d 411, 413 (Tex. App.—Tyler 1977, writ ref'd n r.e.) ("[T]he court in a divorce action has no power to disturb the rights which creditors lawfully have against the parties"). The divorce decree divided property and liabilities between the Borrower and Legall-Johnson; it did not disturb JPMC's rights or obligations under the Note and Deed of Trust.

Further, Legall-Johnson does not meet the definition of "successor in interest" under paragraph 13 of the Deed of Trust. The Deed of Trust defines a successor in interest of the Borrower as someone who (1) "assumes Borrower's obligations under the Security Instrument in writing," and (2) "is approved by Lender."

> Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

In *Montenegro v. Ocwen Loan Servicing, LLC*, a property owner alleged he was entitled to notice of default and opportunity to cure under the deed of trust though he was not a signatory to the loan. 419 S.W.3d 561, 570–72 (Tex. App.—Amarillo 2013, pet. denied). The court disagreed, finding that the property owner's agreement with the borrower to assume the borrower's obligations did not make him a "successor in interest" as defined by the deed of trust nor entitle him to notice of default and opportunity to cure. That he notified the mortgage servicer of his alleged ownership interest and requested "authorization" to pay the mortgage payments directly to the mortgage servicer made no difference.

While the Deed of Trust provides that a successor in interest under the security agreement "shall obtain all of Borrower's rights and benefits under this Security Instrument," it conditions obtaining the status of successor in interest upon the written assumption of Borrower's obligations under the Deed of Trust, and approval of the assumption by the Lender. The Deed of Trust further provides that, "[a]ny forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third-persons ... shall not be a waiver of or preclude the exercise of any right or remedy." Thus, the mere fact that an owner requested authorization to make mortgage payments directly to the mortgage servicer did not make him a

successor in interest under the deed and, therefore, did not establish that he was entitled to notice of default and opportunity to cure.

Here, Plaintiffs allege that JPMC failed to send Legall-Johnson notice of the foreclosure sale. Under the Deed of Trust, she is not a borrower or mortgagor (as shown by the Loan documents). She admits JPMC did not approve her request to assume the Loan as required to meet the definition of a successor in interest under the Deed of Trust. The application attached to the Complaint explains that it is not an application to assume the Loan (Doc. 1-5 at 81) ("THIS REQUEST DOES NOT CHANGE WHO IS FINANCIALLY RESPONSIBLE FOR THE LOAN") (emphasis in original). And it provided her a telephone number if she wished to discuss options to take financial responsibility for the loan. (Doc. 1-5 at 83). It further explained that an owner of property is not the same as being liable to JPMC for mortgage payments but that "payments should be made to keep the loan in good standing" and "if the loan is not kept up to date, it could affect [the property owner's] ownership." (Doc. 1-5 at 83.)

Under the Deed of Trust, JPMC had no duty to provide Legall-Johnson, or her attorney, notice of the foreclosure sale. Accordingly, JPMC's alleged failure to provide Legall-Johnson or her attorney notice of the sale—even if true—does not demonstrate a foreclosure defect.

    3.   An appointment of substitute trustee was recorded prior to the sale.

Plaintiffs erroneously allege the foreclosure sale was conducted by a substitute trustee who was not appointed and that her appointment had not been recorded. (Doc. 1-5 at 7.) The foreclosure sale was conducted by substitute trustee, Anna Sewart. (Doc. 1-5 at 97). On July 12, 2018, JPMC executed the Appointment of Substitute Trustee, which authorized Anna Sewart to serve as substitute trustee. Ex. D. The Appointment of Substitute Trustee was duly recorded in the Official Real Property Records of Harris County, Texas on July 17, 2018—almost eleven months before

the sale. Ex. D. Plaintiffs' incorrect allegation concerning the properly appointed trustee does not support a wrongful foreclosure claim.

1. Timely notice was provided to the Borrower.

The substitute trustee's deed is accompanied by an affidavit (Doc. 1-5 at 111), containing prima facie evidence that JPMC timely served the notice of sale.

> At the instructions and on behalf of the holder of the debt or its agent, notice of acceleration of the indebtedness and Notice of Trustee's Sale was served on every Debtor obligated on the debt, in strict compliance with the Texas Property Code, by certified mail at least twenty-one (21) days prior to the date therein specified for sale that the last known address of each such Debtor according to the

Tex. Prop. Code. § 51.002(e) ("[s]ervice of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.") Texas law does not require that the debtor receive actual notice. *Martins v. BAC Home Loan Serv. L.P.*, 722 F.3d 249, 256 (5th Cir. 2013). Plaintiffs allege that JPMC sent notice of the foreclosure sale after the sale occurred (Compl. at 2), but they premise this allegation on a notice provided in connection with eviction proceedings (Doc. 1-5 at 123), not foreclosure proceedings.[3] The allegation that JPMC sent an eviction notice after the foreclosure sale does not support a wrongful foreclosure claim.

Because Plaintiffs have not pleaded allegations that support each of the three elements of a wrongful foreclosure claim, the Complaint should be dismissed.

---

[3] The exhibits to the Complaint show that the certified mail tracking number, ending in 5153, corresponds to an eviction notice sent on June 19, 2022 not a foreclosure notice as Plaintiffs allege. (Compl. at 2.)

**C.      The statute of frauds bars the purported promissory estoppel claim.**

Plaintiffs' promissory estoppel claim arises from alleged oral promises to delay foreclosure and to "reset up the payment on the Property to be paid monthly by [Legall-Johnson]." (Compl. at 13.) Because the loan agreement exceeds $50,000 in value, it is subject to the statute of frauds.[4] *See* Tex. Bus. & Com. Code § 26.02(b). The statute of frauds applies to modifications of loan agreements, including alleged agreements to forego or delay the right to foreclose. *Martins*, 722 F.3d at 257; *Milton v. U.S. Bank Nat. Ass'n*, 508 Fed. App'x 326, 328-29 (5th Cir. 2013) ("An agreement to delay foreclosure is subject to the Texas statute of frauds, and, accordingly, must be in writing to be enforceable"). "Promissory estoppel may overcome the statute-of-frauds requirement in Texas, but 'there must have been a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds.'" *Martins*, 722 F.3d at 256-57 (quoting *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App.—Houston [14th Dist.] 1992, writ denied)).

Plaintiffs generally allege JPMC promised not to foreclose. They fail, however, to identify a written agreement that JPMC promised to sign inhibiting JPMC's right to foreclose that would satisfy the statute of frauds. Plaintiffs also fail to plead reliance or actual damages—both of which are required elements. In fact, justifiable reliance can be negated as a matter of law when circumstances exist under which reliance cannot be justified. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)). Here, JPMC reminded Legall-Johnson that "payments should be made to keep the loan in good standing" and "if the loan is not kept up to date, it could affect [the property owner's] ownership." (Doc. 1-5 at 83.) Consistent with that reminder, JPMC in fact proceeded with foreclosure. Thus, any reliance by Legall-Johnson on

---

[4] To satisfy the statute of frauds, a promise must be: (1) in writing; and (2) signed by the party to be charged with the promise. *See* Tex. Bus. & Com. Code § 26.01(a).

alleged promises not to foreclose would have been unreasonable as a matter of law given the terms of the Deed of Trust, foreclosure notices, and the application attached to their Complaint. Plaintiffs fail to plausibly state a claim for promissory estoppel.

With respect to the alleged promise that Legall-Johnson could obtain the status of a successor in interest such that she could make payments, Plaintiffs do not allege that Legall-Johnson ever attempted to make a payment. On the contrary, she acknowledges the Loan was in default and she refused to make payments to JPMC because she allegedly did not believe JPMC owned the Loan. (Doc. 1-5 at 8.)

### D.     Plaintiffs' purported fraud claim does not satisfy Rules 9 or 12(b)(6).

Plaintiffs' fraud claim is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Hoffman v. L & M Arts*, 838 F.3d 568, 576–77 (5th Cir. 2016). *See* Fed. R. Civ. P. 9 (b); *Benchmark Elecs., Inc. v. J.W. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). To sufficiently plead a fraud claim, Plaintiffs must specify the time, place, and content of the misrepresentation, as well as the identity of the speaker and what benefit the speaker gained from the misrepresentation. *Williams*, 112 F.3d at 177-78.The elements of common-law fraud are (1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation was false or made the misrepresentation recklessly, without knowledge of the truth; (4) the defendant intended for the plaintiff to act on the misrepresentation; (5) the plaintiff acted on the misrepresentation; and (6) the plaintiff incurred damages. *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

Here, Plaintiffs allege in vague terms that JPMC made "false material misrepresentations" that she did not have to refinance the debt but could continue to make payments. Plaintiffs do not allege with specifics the who, what, when, and where. Further, Legall-Johnson admits the Loan

was in default and that she did not make the payments due to JPMC. Accordingly, she has not pleaded facts to support the element of reliance. The fraud claim does not meet the Rule 9 or 12(b)(6) standards and should be dismissed.

**E.      Plaintiffs cannot prevail on a claim for civil conspiracy.**

To the extent alleged against Defendants, the two-year statute of limitations bars the civil conspiracy claim. *Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 719 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding a two-year statute of limitations applies to civil conspiracy claim even if underlying tort is fraud); *Stevenson v. Koutzarov*, 795 S.W.2d 313, 318 (Tex. App.— Houston [1st Dist.] 1990, writ denied). The statute of limitations begins to run when the plaintiff discovers, or with the exercise of reasonable diligence, should have discovered the nature of his injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990).

Plaintiffs premise their conspiracy allegations on the alleged failure to send notice of foreclosure to Plaintiffs or their attorney. *See* Ex. A-3 at p. 2. The foreclosure occurred on June 4, 2019. Therefore, Plaintiffs' civil conspiracy claim accrued, at latest, in June 2019. Accordingly, Plaintiffs' civil conspiracy claim is barred by the statute of limitations.

Further, civil conspiracy is a derivative tort. *Homoki v. Conversion Services, Inc.*, 717 F.3d 388, 402 (5th Cir. 2013). Therefore, liability for a civil conspiracy depends on participation in an underlying tort. *Id.* To adequately plead a claim for civil conspiracy, a plaintiff must adequately plead the underlying tort. *Id.* As discussed below, Plaintiffs fail to adequately plead wrongful foreclosure. Therefore, their civil conspiracy claim—even if not barred by limitations—fails as a matter of law.

CONCLUSION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint should be dismissed

for failure to state a claim. Defendants further request such relief in equity or law to which they are

entitled.

Respectfully submitted,

*/s/ Rachel L. Hytken*
WM. LANCE LEWIS, Attorney-in-Charge
Texas Bar No. 12314560
S.D. Bar No. 28635
RACHEL L. HYTKEN, of counsel
Texas Bar No. 24072163
S.D. Bar No. 1130996
**QUILLING, SELANDER, LOWNDS,**
  **WINSLETT & MOSER, P.C.**, of counsel
2001 Bryan Street, Suite 1800
Dallas, Texas  75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
llewis@qslwm.com
rhytken@qslwm.com

**ATTORNEYS FOR DEFENDANTS**
**JPMORGAN CHASE BANK, N.A. AND**
**JPMORGAN CHASE & CO.**

CERTIFICATE OF SERVICE

This is to certify that on May 23, 2022, a true and correct copy of the foregoing pleading
has been furnished to Plaintiffs' counsel of record in accordance with the Federal Rules of Civil
Procedure.

Via CM, RRR [9314 8699 0430 0095 5463 64]
Sonya Chandler Anderson
The Law Office of Sonya Chandler Anderson
P.O. Box 2532
Humble, Texas 77347

*/s/ Rachel L. Hytken*
Rachel L. Hytken